# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,   )<br>                                                        )<br>            Plaintiff,                        )<br>                                                        )<br>vs.                                                   )     No. 17-CR-195-D<br>                                                        )<br>RALPH ALLEN LEE SHORTEY,   )<br>                                                        )<br>            Defendant.                   )<br>                                                        ) | |

## UNITED STATES' SENTENCING MEMORANDUM

The United States respectfully submits this Sentencing Memorandum to assist the Court in resolving disputes regarding the application of the United States Sentencing Guidelines ("USSG" or "Guidelines") to Mr. Shortey's offense conduct.

### I.     Victim Background Irrelevant

The United States requested certain information about the victim's personal history to be removed from Paragraph 19 of the PSR, and that request was denied. This issue has no effect on the Guidelines calculation but affects the framing of Mr. Shortey's offense.[1]

---

[1]     The United States recognizes that the Federal Rules of Evidence, and specifically Rule 412, are not at issue at this point, that the PSR is not public,

The PSR cites *United States v. Myers*, 481 F.3d 1107 (8th Cir. 2007), as support for including information about this victim's personal sexual history. But *Myers* considered a vulnerable victim enhancement, which is not at issue in this case. Such an enhancement would require the Court to focus on the victim's particular circumstances. Here, instead, it is **Defendant's** conduct that is examined by the Guidelines Section 2G1.3(b)(2)(B) enhancement for undue influence, which applies when the **defendant** "otherwise unduly influenced a minor." Further, even in *Myers*, the victim's prior conduct was her falling in love with another adult on the internet and planning to meet, not her sexual history. *Myers* does not provide direct support for using a victim's **sexual** history—protected by Federal Rule of Evidence 412—to evaluate the influence exerted by a defendant.

To explain the inclusion of information about the victim's personal history, the PSR comments that "this is not a case about rape, whether forcible or statutory. Consent of the victim to engage in sexual conduct is not at issue in this case." (PSR p. 26.) The PSR also suggests that Defendant's only criminal act was offering to pay money for otherwise consensual sexual contact as a matter of state law. (*Id.* ¶ 111.) The PSR admits that in a "rape case, it

---

and that the normal risks of victim shaming are not at issue. Nevertheless, some of the commentary in the Final PSR merits a response.

would be wholly improper to reference the victim's prior sexual acts." (*Id.* at p. 26.) Thus the PSR advocates the use of the victim's sexual behavior or sexual predisposition based on a conclusion that Mr. Shortey's offense—federal child sex trafficking—is not "rape." That conclusion is wrong.

Any person under the age of eighteen years is a "minor" under federal law for the purpose of preventing the sexual exploitation and abuse of children. 18 U.S.C. § 2256. Federal child sex trafficking law recognizes no defense of "consent" because monetizing a child's body fundamentally transforms the sexual conduct into something that cannot be consensual.[2] Force, fraud, and coercion are inherent in the trafficking of any child. *United States v. Afyare*, 632 F. App'x 272, 287 (6th Cir. 2016) ("This distinction is important: § 1591(a) requires no proof of force, fraud, or coercion in the sex trafficking of a ***child***, because a child cannot consent, whereas force, fraud, or coercion is a necessary element for the sex trafficking of an ***adult***.") (emphasis in original). Thus, this Court has instructed a jury in a factually similar case with a Section 1591 child

---

[2] Indeed, even under the Oklahoma law enacted in 2015 and in place at the time of the offense, the normal 16-year age of consent does not apply when the victim is being trafficked. 21 O.S. §§ 748(A)(8) (for the purpose of trafficking, a minor is anyone under 18), (A)(6)(b) (obtaining a minor for commercial sex act is human trafficking for commercial sex), (C) (trafficking a minor is a felony punishable by a mandatory minimum of 15 years' incarceration), and (E) (consent is not a defense).

sex trafficking charge that "[w]hether or not a minor consented to commercial sex is irrelevant. The consent or voluntary participation of a minor is not a defense because a minor cannot legally consent." Doc. 309 at 44, Jury Instructions, Case No. 15-CR-126-C, *United States v. Anthony* (W.D. Okla.).

Traditional rape shield protections thus apply in child sex trafficking cases. *See, e.g.,* Doc. 291, Order Granting Rule 412 Motion in Limine, *United States v. Anthony* (Case No. 15-CR-126-5-C); *see also United States v. Roy*, 781 F.3d 416, 420 (8th Cir. 2015) (affirming that evidence of prior prostitution was properly excluded in adult sex-trafficking case because it did not undercut evidence that the adult was coerced and was unduly prejudicial); *United States v. Cephus,* 684 F.3d 703, 708 (7th Cir. 2012). The Eighth Circuit has explained that prior trafficking is only evidence of another crime committed by someone else, not evidence of a victim's willingness:

> What Elbert fails to recognize is the evidence he wishes to admit does not provide a defense for the crime with which he was charged and convicted. Elbert repeatedly argues evidence of the victims' prior acts of prostitution demonstrates he did not cause them to engage in commercial sex acts. Because the victims were minors and could not legally consent, the government did not need to prove the elements of fraud, force, or coercion, which are required for adult victims. . . . Whether the children engaged in acts of prostitution before or after their encounters with Elbert is irrelevant, and would only prove other people may be guilty of similar offenses of recruiting, enticing, or causing these victims to engage in a commercial sex act.

*United States v. Elbert*, 561 F.3d 771, 777 (8th Cir. 2009).

In early 2015, the Senate considered and agreed to a resolution that children trafficked for sex in the United States should not be called child prostitutes "because there is no such thing as a 'child prostitute,' only children who are victims or survivors of rape and sex trafficking." 2015 Senate Resolution 81, 114th CONGRESS, 1st Session, 2015 CONG US SRES 81 (Feb. 12, 2015). The House of Representatives referred a similar resolution to the Committee on the Judiciary in early 2015, noting that "exploited and trafficked girls are not 'bad girls' or 'child prostitutes', but are victims of systemized rape who need the same legal supports and protections other rape victims are afforded." House Resolution 62, 114th Congress, 1st Session, 2015 CONG US HRES 62 (Jan. 28, 2015). Thus, in the context of trafficking, child victims are victims of sexual assault and rape, and they lack capacity to consent.

Although Mr. Shortey's trafficking of Doe differs in some respects from traditional trafficking models, he groomed Doe for a year and normalized the concept of selling Doe's body for drugs or money. The focus at sentencing should be on Mr. Shortey's acts and his influence, not on the child victim's purported willingness. And, in contrast to the commentary in Paragraph 111 of the PSR, Mr. Shortey's relevant conduct—described in Paragraph 22 of the PSR— demonstrates a broader pattern of conduct, with other underage victims, that

is serious and dangerous.

## II. Defendant Unduly Influenced Doe.

Guidelines Section 2G1.3(b)(2)(B) provides, "If [] a participant otherwise unduly influenced a minor to engage in prohibited sexual conduct, increase by 2 levels." The Commentary explains, "In a case in which a participant is at least 10 years older than the minor, there shall be a rebuttable presumption that subsection (b)(2)(B) applies. In such a case, some degree of undue influence can be presumed because of the substantial difference in age between the participant and the minor." The PSR supports the application of this enhancement, but in response to Mr. Shortey's objection, the Final PSR suggests (at p. 29), "It appears that this may be one of the cases where the presumption can be rebutted." Accordingly, the United States submits this Sentencing Memorandum in support of the enhancement.

As correctly noted in the Report, there is a rebuttable presumption that Mr. Shortey unduly influenced Doe because he was more than 10 years older than Doe. (Doc. 38 ("PSR") at ¶ 29.) That presumption is based on the fact that such a difference in life experience, maturity, and brain development increases the effectiveness of an adult's requests of a child and undercuts the child's ability to refuse such requests. In the context of sex trafficking, that age discrepancy is combined with the influence of money. But Mr. Shortey's undue

influence went beyond just his age and the offer of money.

Mr. Shortey first encountered Doe when Doe was only 16 years old, becoming friends on a social media application in February 2016. As described in the PSR (at ¶ 19), Mr. Shortey enticed Doe to meet by offering that Doe could "play around with his wife" while Mr. Shortey watched, therefore enticing Doe to meet. Mr. Shortey then groomed Doe by communicating with him for a year, from February 2016–March 2017, when they were eventually found at the motel. (*See id.* at ¶ 15 "He told officers he had known [Doe] for about a year[.]"; ¶ 19 ("He had told the defendant he was 16 when they met."; ¶ 20 ("He also disclosed that on two previous instances they had met at the defendant's coffee shop, watched pornography, and "fooled around," and that the defendant gave him marijuana or wax (concentrated THC) after having sex . . . . He again confirmed that the defendant knew his age, as he told him he was 16 when they first met.").) Thus, Mr. Shortey exerted undue influence by enticing Doe by offering sex with his wife, drugs, pornography, money, and a hotel room. (PSR ¶¶ 15-17, 19-20.) Drugs provided by Mr. Shortey literally provided physical influence to compromise the victim's voluntariness. Beyond that, Mr. Shortey possessed attributes that made his influence particularly potent: he was a successful businessman with his own commercial space where they met, his stature was intimidating, and he was a prominent state senator.

Thus, the specific offense enhancement for undue influence is appropriate here. It is similar to the application of the enhancement in *United States v. Castellon*, 213 Fed.App'x 732 (10th Cir. 2007) (undue influence was appropriate where defendant wooed the victim with a Wendy's lunch, a box of chocolates, and a rose, and when defendant picked up the victim "in the middle of the night for sexual liaisons at hotels he paid for"). Likewise, this court has applied the undue influence enhancement in other cases in which customers were convicted of either the substantive offense of child sex trafficking or a conspiracy to commit child sex trafficking. (*See, e.g., United States v. Anthony* (Case No. 15-CR-126-C); *United States v. Baker*, (Case No. 15-CR-126-C).)

Mr. Shortey has not rebutted the presumption here.

### III. The United States Seeks Restitution for Doe.

The United States will seek restitution on behalf of Doe. Under the Mandatory Victim Restitution Act (the "MVRA"), a guardian may assume the victim's rights under the statute, 18 U.S.C. § 3663A(a)(2), and this Court has appointed a guardian ad litem to advocate on Doe's behalf (Doc. 37). In addition, Mr. Shortey has been convicted of an offense pursuant to the Trafficking Victims Protection Reauthorization Act (the "TVPRA"), which has a special restitution statute in Title 18, Chapter 77 (Peonage, Slavery, & Trafficking in Persons), Section 1593. It is "[n]otwithstanding" the provisions

of the MVRA, and "in addition to" other civil or criminal penalties.

Section 1593 requires that the defendant pay the victim "the full amount of the victim's losses," *id.* § 1593(b)(1), including "(A) medical services relating to physical, psychiatric, or psychological care; (B) physical and occupational therapy or rehabilitation; (C) necessary transportation, temporary housing, and child care expenses; (D) lost income; (E) attorneys' fees, as well as other costs incurred; and (F) any other losses suffered by the victim as a proximate result of the offense," 18 U.S.C. § 2259(b)(3) (incorporated by reference in 18 U.S.C. § 1593(b)(3)).

Title 18, United States Code, Section 3664 sets out the procedure for a determination of restitution. It allows the Court to postpone a determination of the victim's losses until up to 90 days after sentencing. 18 U.S.C. § 3664(d)(5). The Court has not yet set a date for Mr. Shortey's sentencing. The United States is diligently working to calculate Doe's losses, and if that determination is not complete by 10 days prior to sentencing, the United States will request a later determination on that issue.

Respectfully submitted,

ROBERT J. TROESTER
Acting United States Attorney


*s/ K. McKenzie Anderson*
K. McKenzie Anderson
Oklahoma Bar No. 30471
Assistant United States Attorney
210 West Park Avenue, Suite 400
Oklahoma City, Oklahoma 73102
(405) 553-8781 - Telephone
(405) 553-8888 - Facsimile
mckenzie.anderson@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 30, 2018, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Ed Blau, Counsel for Defendant

s/ K. McKENZIE ANDERSON<br>
Assistant U.S. Attorney